SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS) (collectively, the "United States"), Modernizing Medicine, Inc. (ModMed), and Relator Amanda Long (Relator) (hereafter collectively referred to as "the Parties"), through their authorized representatives.

RECITALS

A.  ModMed is a privately owned vendor of health information technology including integrated electronic health record ("EHR") software. ModMed is incorporated in Delaware and headquartered in Boca Raton, Florida.

B.  On September 22, 2017, Amanda Long filed a *qui tam* action in the United States District Court for the District of Vermont captioned *United States ex rel. Long* v. *Modernizing Medicine, Inc.,* Case No. 2:17-cv-179 (D. Vt.), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator filed an amended complaint on May 27, 2021. The United States intervened in the Civil Action on March 15, 2022.

C.  The United States contends that it has certain civil claims against ModMed for causing healthcare providers to submit: (a) false claims for incentive payments to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395lll ("Medicare") and the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid") (hereinafter the federal health care programs") based on the use of ModMed's EHR software, which is marketed as "EMA"; and (b) false claims to the federal health care programs for claims for reimbursement that were tainted by unlawful remuneration.

D.      As set forth in greater detail in the United States' Complaint in Intervention, the United States contends the following (the "Covered Conduct"):

(1)     The United States contends that ModMed had certain business arrangements that violated the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b, and that caused violations of the False Claims Act, 31 U.S.C. §§ 3729-33, by ModMed causing to be submitted false claims to the federal health care programs. Specifically:

(a)     The United States contends that between January 2010 and December 2013, ModMed facilitated EHR donations to ModMed customers by Miraca Life Sciences ("Miraca") that did not comply with the requirements of the AKS because the donation decisions took into account the volume or value of the referrals of laboratory tests or other business between EHR donation recipients that were ModMed customers and Miraca and therefore did not meet the requirements of the AKS safe harbor exception applicable to EHR donations, 42 C.F.R. § 1001.952(y) . The United States alleges that these ModMed customers submitted tainted claims for reimbursement to the federal health care programs for pathology services performed by Miraca from January 2010 to December 2013, and also submitted tainted claims for meaningful use incentive payments under the Medicare and Medicaid Electronic Health Record Incentive Programs (the "Meaningful Use Programs") of the Centers for Medicare & Medicaid Services (CMS).

(b)     In September 2013, Miraca paid ModMed an initial fee and increased transaction fees to develop and include in its EHR software, EMA, certain enhanced interface features that ModMed agreed, for a period of time, not to offer to any other pathology laboratory. ModMed also agreed to make dermatologists

aware of the availability and benefits of the enhanced interface features that were, for a period of time, exclusive to Miraca. The United States alleges that during the period of May 2014 to December 2016, the arrangement violated the AKS and resulted in the submission of false claims to federal health care programs for pathology services performed by Miraca.

(c)     The United States contends that, between January 2010 and July 2017, ModMed made payments to customers, consultants, and other third parties in exchange for recommendations of its EHR software, EMA, that did not comply with the requirements of the AKS because they did not represent fair market value for personal services rendered. As a result, the United States alleges that between January 2010 and July 2017, ModMed users submitted tainted claims for incentive payments under the Meaningful Use Programs.

(2)     The United States contends that, during the time period from April 2014 through July 2017, ModMed's EMA software did not always enable a user to conduct transactions using required standard vocabularies. As a result, the United States alleges that ModMed users reported inaccurate information in connection with claims for incentive payments under the Meaningful Use Programs.

E.      This Settlement Agreement is neither an admission of liability by ModMed nor a concession by the United States that its claims are not well founded. ModMed denies the United States' allegations in Paragraph D and its complaint in intervention.

F.      Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Agreement, the Parties agree and covenant as follows:

### TERMS AND CONDITIONS

1.     ModMed shall pay to the United States $45,000,000 (forty-five million dollars) ("Settlement Amount") of which $19,550,000 (nineteen million, five hundred and fifty thousand dollars) is restitution, and interest on the Settlement Amount at a rate of 3% per annum from May 31, 2022, no later than ten (10) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice.

2.     Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $9,000,000 (nine million dollars), plus interest accrued on that amount, to Relator by electronic funds transfer (Relator's Share).

3.     ModMed and Relator have reached an agreement as to the amount of attorneys' fees, expenses and costs to be paid by ModMed. ModMed shall pay the amount specified in an October 28, 2022 agreement between ModMed's counsel and Relator's counsel no later than ten (10) days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions provided by Phillips & Cohen, LLP, counsel for Relator.

4.     Subject to the exceptions in Paragraph 6 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, the United States releases ModMed, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31

U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5. Subject to the exceptions in Paragraph 6 below, and upon the United States' receipt of the Settlement Amount, plus interest due under Paragraph 1, Relator, for herself and for her heirs, successors, attorneys, agents, and assigns, releases ModMed, together with its current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; the corporate successors and assigns of any of them; and all of its current and former officers, directors, employees, attorneys, and other agents from any claims the Relator has asserted, could have asserted, or may assert in the future related to the Civil Action, including any civil monetary claims Relator has asserted or could assert on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6. Notwithstanding the releases given in Paragraphs 4 and 5 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability or enforcement right, including mandatory or permissive exclusion from federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

   f. Any liability of individuals;

   g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

   h. Any liability for failure to deliver goods or services due; and

   i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

  7. Relator and her heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B).

  8. ModMed waives and shall not assert any defenses ModMed may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

  9. ModMed fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that ModMed has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

  10. ModMed on behalf of itself and its predecessors, successor, assigns, parents, investors and agents, as well as any of their past or present managers, directors, officers, employees, insurers and attorneys, fully and finally releases the Relator and her heirs, successors,

attorneys and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that ModMed has asserted, could have asserted, or may assert in the future against the Relator, related to the Civil Action and the Relator's or the United States' investigation and prosecution thereof.

11. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and ModMed agrees not to resubmit to any Medicare contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

12. ModMed agrees to the following:

a. <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395111 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of ModMed, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) ModMed's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4) the negotiation and performance of this Agreement; and

the payment ModMed makes to the United States pursuant to this Agreement and any payments that ModMed may make to Relator, including costs and attorneys' fees are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs).

b. <u>Future Treatment of Unallowable Costs</u>: Unallowable Costs shall be separately determined and accounted for by ModMed, and ModMed shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by ModMed or any of its subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: ModMed further agrees that within 90 days of the Effective Date of this Agreement it shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by ModMed or any of its subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be adjusted to account for the effect of the inclusion of the Unallowable Costs. ModMed agrees that the United States, at a minimum, shall be entitled to recoup from ModMed any

overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by ModMed or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this paragraph) on ModMed or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.   Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine ModMed's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this paragraph.

13.   ModMed agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, ModMed shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. ModMed further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

14. This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15. ModMed agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. Upon receipt of the payments described in Paragraph 1 and 3, above, the United States and Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1) and subject to the terms of this Agreement (the "Stipulation"). The Stipulation shall state that the allegations described in the United States' Complaint in Intervention shall be dismissed with prejudice as to the United States. Any remaining claims in the action shall be dismissed without prejudice as to the United States. All claims shall be dismissed with prejudice as to Relator..

17. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

18. Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

19. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Vermont. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

20. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

21. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

22. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

23. This Agreement is binding on ModMed's successors, transferees, heirs, and assigns.

24. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

25. All Parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

26. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 11/1/22   BY: _____
LAUREN LIVELY
Assistant United States Attorney
United States Attorney's Office
District of Vermont

DATED: 11/1/22   BY: _____
KELLEY HAUSER
SARAH A. HILL
EDWARD CROOKE
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: 11/01/2022   BY: _____
LISA M. RE
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General Office of
Inspector General
United States Department of Health and Human Services

**DEFENDANT MODMED**

DATED: 11/1/2022    BY: *(signed)* Mark Fleisher
Mark Fleisher
General Counsel
Modernizing Medicine, Inc.

DATED:    BY: _____
LAURA G. HOEY
*Counsel for Modernizing Medicine, Inc.*

DATED:    BY: _____
AARON KATZ
*Counsel for Modernizing Medicine, Inc.*

**DEFENDANT MODMED**

DATED: _____   BY: _____
                              Mark Fleisher
                              General Counsel
                              Modernizing Medicine, Inc.

DATED: 11-1-22   BY: _____
                              *[signature]*
                              LAURA G. HOEY
                              *Counsel for Modernizing Medicine, Inc.*

DATED: _____   BY: _____
                              AARON KATZ
                              *Counsel for Modernizing Medicine, Inc.*

## DEFENDANT MODMED

DATED: _____  BY: _____
                          Mark Fleisher
                          General Counsel
                          Modernizing Medicine, Inc.

DATED: _____  BY: _____
                          LAURA G. HOEY
                          *Counsel for Modernizing Medicine, Inc.*

DATED: 10/31/22       BY: _____
                          AARON KATZ
                          *Counsel for Modernizing Medicine, Inc.*

-13-

**RELATOR AMANDA LONG**

DATED: 10/28/2022   BY: _____
                         AMANDA LONG

DATED:              BY: _____
                         COLETTE G. MATZZIE
                         *Counsel for Amanda Long*

DATED:              BY: _____
                         Tristram Coffin

                         *Counsel for Amanda Long*

-14-

## **RELATOR AMANDA LONG**

DATED:           BY: _____
                                       AMANDA LONG

DATED: 10/28/22   BY: _____
                                       COLETTE G. MATZZIE
                                       *Counsel for Amanda Long*

DATED:           BY: _____
                                       Tristram Coffin

                                       *Counsel for Amanda Long*

**RELATOR AMANDA LONG**

DATED:           BY: _____
                                         AMANDA LONG

DATED:           BY: _____
                                         COLETTE G. MATZZIE
                                         *Counsel for Amanda Long*

DATED: 10/30/22   BY: _____
                                         Tristram Coffin

                                         *Counsel for Amanda Long*